## TALLAPOOSA COUNTY BANK v. KREIS. *
### No. 5775.

Circuit Court of Appeals, Fifth Circuit.
Dec. 11, 1930.

John V. Denson and N. D. Denson, Jr., both of Opelika, Ala. (Jas. W. Strother, of Dadeville, Ala., on the brief), for appellant.

Jacob A. Walker, of Opelika, Ala., D. C. Webb, of Knoxville, Tenn., and J. Sanford Mullins, of Alexander City, Ala., for appellee.

Before BRYAN and WALKER, Circuit Judges, and HOLMES, District Judge.

*Rehearing denied February 21, 1931.

BRYAN, Circuit Judge.

The Tallapoosa County Bank sued J. A. Kreis on his alleged promise to pay to it $12,000 which he owed and paid to the J. P. Bogart Company, and which in turn that company owed but did not pay to the bank. Kreis denied making the promise alleged, and on the issue thus made there was a verdict and judgment in his favor. The bank assigns as error the refusal of the trial court to admit in evidence two letters which it received from Kreis and offered for the purpose of corroborating oral testimony adduced in its behalf.

Kreis during the years 1925 and 1926 was under contract with a railway company to do certain construction work, and the Bogart Company was a subcontractor under him as to a portion of the work. By the terms of the principal contract the railway company retained 10 per cent. of the contract price until final completion of the work. The Bogart Company, as between it and Kreis, was entitled to 90 per cent. of the retained percentage. Bogart, who acted for his company, borrowed money from the bank in order to meet his pay rolls and perform the subcontract. In April, 1925, he directed Kreis by letter to mail all his "estimate" checks to the bank. On November 5, 1925, Kreis wrote the bank a letter, which purports to be a reply to one from the bank, in which he stated that Bogart had over $11,000 retained percentage up to October 1st, and had finished with the most expensive part of his subcontract. The bank also received a letter dated November 13, 1925, purporting to be from Kreis, but which was written and signed in his name by Mrs. Leach, who, according to the testimony, had charge of the office and was authorized to answer letters. That letter also shows on its face that it was in reply to a letter from the bank and states that Bogart's retained percentage on November 1st amounted to more than $12,000, and contains the following statements:

"Regarding the amount of retained percentage due Mr. Bogart as referred to in your letter. As I see it when this is received upon completion and acceptance by the Railroad Co. we are to mail direct to you the amount which will be due him at that time. We have an order to pay all money to your bank. Mr. Bogart got quite a nice estimate for the month of October, which puts him in a much better shape than when we wrote you before. At the time we wrote you we did not know how much this was going to amount to."

The bank's president, Gray, testified that after November 17, 1925, the bank advanced to the Bogart Company $12,500, and that in the following December or January he had a conversation with Kreis in which he stated that the bank had lent to Bogart a large sum of money and was being called on from time to time to advance more money on pay rolls and construction work, and that the witness wanted to know how much retained percentage Bogart had at that time; that Kreis replied that he had written Gray about the matter, and that Bogart's retained percentage amounted to between $12,000 and $13,000. Gray testified that he then stated to Kreis that the bank was unwilling to keep advancing money unless it had some assurance that Kreis would pay to it $12,000 out of the money that would be coming to Bogart; and that Kreis replied that he would pay $12,000 to the bank out of Bogart's retained percentage. Kreis denied that he made the promise testified to by Gray. At the completion of the contract with the railway company, Bogart's retained percentage amounted to more than $12,000.

The promise relied on by appellant is not one to pay the debt of another, because payment was to be made out of funds which Kreis, as it turned out under the testimony, owed to the Bogart Company; and so the alleged promise was not void under the Statute of Frauds as being an oral one to answer for the debt, default, or miscarriage of a third person. We are of opinion that the rejected letters were admissible for the purpose of corroborating Gray's testimony. The first letter shows that the bank was inquiring about the amount of earned retained percentage to which Bogart was entitled. The second letter refers to Bogart's order to pay his company's retained percentage to the bank, and stated the understanding of Kreis to be that upon completion and acceptance by the railway company of the construction work he would pay the bank the amount which would be due to the Bogart Company at that time, and refers to that company's order to pay all money owing to it to the bank. According to Gray's testimony, the amount claimed was advanced after the receipt of both those letters. Kreis cannot escape liability on the ground that Mrs. Leach was without authority to sign the second letter, because there was testimony from Gray that Kreis ratified and adopted that letter by conceding that it was written by his authority. These letters tended strongly to corroborate Gray's testimony

to the effect that in the conversation he had with Kreis in December the latter made the promise claimed by appellant. That the bank was interested in the retained percentage was clearly recognized in the first letter; and particularly is it a fair inference that Kreis would not refuse to do what it was stated he would do in the second letter of which, according to appellant's evidence, he had knowledge before the conversation was had. It follows that in our opinion it was error to refuse to admit the letters offered in evidence by appellant.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.