GEORGE WASHINGTON LIFE INSUR-
ANCE CO., Inc., a body corporate,
Appellant,

.v.

Mrs. Nora MORGAN, Appellee.

No. 1697.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 10, 1955.

Decided Dec. 8, 1955.

Laidler B. Mackall, Washington, D. C.,
for appellant. George B. Mickum III,
Washington, D. C., also entered an appear-
ance for appellant.

Charles S. Sures, Washington, D. C.,
for appellee.

Before CAYTON, Chief Judge, and
HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

The questions for decision on this ap-
peal are: (1) Whether a medical and sur-
gical expense policy providing benefits for
sickness and accident had lapsed because
of late payment of premiums; (2) Whether,
if the policy was not in force at that time,
the insurer was nevertheless liable to ap-

pellee, plaintiff below, because it was estopped to deny liability or had waived its right to assert its non-liability; and (3) Whether the sickness originated while the policy was in force.

The policy was issued to plaintiff in December 1952 and its terms required payment of monthly premiums in advance on the second day of each month, but provided a grace period of fifteen days after the premium was due, during which time the insurance was to remain in full effect. With one exception, all payments through July 1954 were made either prior to the premium due date or during the grace period. Plaintiff testified that she received a notice prior to the due date for August 1954. Failing to make payment, she received three additional notices during the same month, one of which was subsequent to the grace period. She testified that once prior to August 1954 she had made a payment after the expiration of the grace period which was retained by the insurer and that she was never notified that her policy had lapsed. She further testified that she sent a letter to the insurer explaining that payment would be forthcoming. On August 30, plaintiff sent the premiums for the months of August and September and it was stipulated that these payments were received on September 2, 1954. Both premiums were retained by the insurer. Thereafter plaintiff submitted a claim for reimbursement of medical expenses arising from a diarrhea condition. She testified that she was treated for this condition by her family physician prior to August 17; that she thereafter started hemorrhaging and as a result was hospitalized from September 9 to 16, 1954. When the insurer denied liability, she filed suit and the trial court, sitting without a jury, found that her illness originated while the policy was in force and that the policy had not lapsed because of late premium payment. The court thereupon entered judgment against the insurer for $192.50.

The record reveals that plaintiff's policy lapsed on August 17, 1954, the terminal date of the grace period. Appellant contends that it did not waive this lapse and that it was not estopped from denying liability because of its prior acceptance of a late premium. We believe this contention to be correct. The essence of waiver of lapse for non-payment of premium is an act or a course of conduct on the part of the insurer which reasonably leads the insured to believe that lapse will not be enforced.[1] The record in this case does not establish such conduct by the insurer. In considering the evidence it is to be noted that there are two provisions in the policy which have an important bearing on the pivotal question. The first is "Additional Provision No. 4" which states in substance that if any premium payment is not received by the insurer on or before its due date or within the grace period, the policy shall terminate without further notice. Thus, the insurer was not required to give plaintiff any notice that the policy had lapsed, and she could not have relied on its failure to do so as evidence that she was induced to believe that a lapse would not be enforced. The second provision is "Standard Provision No. 3" which provides:

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

Under this provision plaintiff cannot be said to have been misled by the company's acceptance of one premium which was paid after the grace period since all that was necessary to reinstate under this provision was the payment of money. Since acceptance of a premium in arrears was in accordance with and under a special clause of the policy, waiver or estoppel cannot be

---

1. Lamar v. Aetna Life Ins. Co., 10 Cir., 85 F.2d 141.

said to have resulted.[2] Plaintiff is charged with knowledge of the terms of the policy, and nothing in the insurer's behavior justified her in assuming that the company would accept late payments as a continuation of the policy rather than as a reinstatement.

Plaintiff argues that the acceptance of the double premium on September 2 was indicative of appellant's willingness to waive the lapse since only one payment was required to reinstate the policy. It would be tenuous reasoning to deduce from this act alone an intention to continue the policy in force. We believe the transaction was simply one of reinstatement of a lapsed policy subject to the conditions attendant upon a reinstatement set out in the policy, of which plaintiff knew or of which she was charged with knowledge.[3]

Plaintiff relies solely on our decision in Security National Life Insurance Co. v. Washington, D.C.Mun.App., 113 A.2d 749. For a number of reasons that decision is not in point. There is no indication that the insurance policy in Security National contained a reinstatement provision which in this case explains the acceptance and retention of late premiums. The insurance policy in the instant case made provision for termination without notice so that notice of lapse was not required, while evidently the policy under consideration in Security National required notice of lapse. Finally, there is no history of late billings in the instant case such as there was in Security National but rather there is evidence that the insured received notice prior to due date each month her policy was in effect.

We find no error in the trial court's ruling that plaintiff's sickness originated while the policy was in force since this finding was supported by substantial, though conflicting, evidence. However, it is to be noted that any coverage for sickness originating while the policy is in force is limited by the reinstatement provision where there has been a subsequent lapse.

Since the judgment of the trial court is not supported by substantial evidence and is clearly against the weight of the evidence, that judgment will be

Reversed.

2. Richardson v. American Nat. Ins. Co., 18 La.App. 468, 137 So. 370; Cooper v. Foresters Underwriters, 2 Utah 2d 373, 275 P.2d 675; Farrell v. National Accident & Health Ins. Co., 134 N.J.L. 254, 47 A.2d 1, 167 A.L.R. 329.

3. Denton v. Provident Life & Accident Ins. Co., 238 Ky. 26, 36 S.W.2d 657; Farrell v. National Accident & Health Ins. Co., supra.